**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ | ) |
| | ) |
| **STEVEN NEWMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil Action No. 14-01011 (RDM)** |
| | ) |
| **DISTRICT OF COLUMBIA COURTS** | ) |
| **AND THE** | ) |
| **DISTRICT OF COLUMBIA,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven Newman, a former employee of the District of Columbia Courts ("D.C. Courts"), claims that Defendants D.C. Courts and the District of Columbia unlawfully discriminated against him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Older Workers Benefit Protection Act of 1990 ("OWBPA"), *id*. *See* Dkt. 1.  Plaintiff alleges that Defendants subjected him to an unjustified performance improvement plan and that they compelled him, on pain of termination, to sign a settlement agreement that provided for his temporary reassignment and eventual termination. Plaintiff seeks, *inter alia*, declaratory and injunctive relief, compensatory and punitive damages, and reinstatement to his former position.  *See* Dkt. 1 ¶ 23.

The matter is now before the Court on Defendants' motion to dismiss or for summary judgment (Dkt. 10) and Plaintiff's cross-motion for partial summary judgment (Dkt. 16).  For the reasons set forth below, the Court **GRANTS** in part Defendants' motion to dismiss, dismisses the complaint as to Defendant D.C. Courts, and dismisses Plaintiff's claim based on the

performance improvement plan as untimely.  In all other respects, Defendants' motion to dismiss or for summary judgment is **DENIED**.  The Court **DENIES** Plaintiff's cross-motion for partial summary judgment, and dismisses Plaintiff's claim for declaratory relief for lack of jurisdiction.

## I.  BACKGROUND

### A.  Statutory Background

The ADEA prohibits employers from taking adverse actions against an employee (who is at least 40 years old) on the basis of the employee's age.  *See* 29 U.S.C. §§ 621 *et seq.*  In 1990, Congress enacted the OWBPA, which, among other things, amended certain provisions of the ADEA to establish more stringent requirements for agreements waiving employee rights.  *See* Pub. L. No. 101-433, 104 Stat. 978; *see also Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-27 (1998).  The OWBPA provides that "[a]n individual may not waive any right or claim under this Act unless the waiver is knowing and voluntary."  29 U.S.C. § 626(f)(1).  It further provides that "a waiver may not be considered knowing and voluntary unless" certain criteria are satisfied.  The waiver, for example, must be written in a manner that can be understood by the average individual and does not waive future claims; the employee must be advised to consult with an attorney; the employee must be given at least 21 days to consider the agreement; and the employee must be given at least 7 days to revoke the agreement after its execution.  *See id.* §§ 626(f)(1)(A)-(G).

### B.  Factual and Procedural Background

For purposes of resolving the pending motions, the following facts are undisputed, except as expressly noted.[1]  Plaintiff is in his mid-60s and worked for the D.C. Courts for 25 years, until

---

[1]  Although Plaintiff submitted a statement of material facts on which he contends "no genuine issue exists," Dkt. 15 at 3-8, he has failed to support his opposition to Defendants' motion for summary judgment with the required (*see* Local Civil Rule 7(h)) statement of facts that he

his employment ended in 2013. *See* Dkt. 1 ¶ 10; Dkt. 10 at 17 ¶ 1. Over the years, his

employment evaluations were consistently average or above average. *See* Dkt. 1 ¶ 10. Indeed,

as late as 2011, Plaintiff received an "Exceeds Expectations," which was the second highest

rating, on his employment evaluation. *See* Dkt. 1 ¶ 10; Dkt. 10 at 17 ¶ 3. He alleges, however,

that in late June 2011 his supervisor, Dana Friend, told him, "You're not doing anything. For the

same money you're being paid, I could get two lower level positions with younger people." *See*

Dkt. 1 ¶ 11. Mr. Friend denies making this assertion. *See* Dkt. 19-3 ¶ 11 (Declaration of Dana

Friend).

There is no dispute, however, that shortly after Mr. Friend allegedly made this statement

he put Plaintiff on a performance improvement plan. *See* Dkt. 1 ¶ 11; Dkt. 10 at 18 ¶ 5; Dkt. 19-

3 at 1. Under the plan, Plaintiff was given a specific assignment—to write a manual containing

job descriptions for the employees at the D.C. Courts. *See* Dkt. 1 ¶ 11. Unfortunately, Mr.

Friend concluded that Plaintiff failed to complete this assignment in a timely manner and that his

work was "totally unacceptable." *See* Dkt. 1 ¶ 11; *see also* Dkt. 15-6; Dkt. 19-3. Plaintiff

contends that Mr. Friend never set a deadline to complete the project and that he never explained

why Plaintiff's work was unacceptable. *See* Dkt. 1 ¶ 11. In Plaintiff's view, the performance

improvement plan "was a pretext in an effort by Defendant [D.C. Courts] to falsely create

something negative about" him. Dkt. 1 ¶ 11.

Although the parties disagree about how they got to this point, by mid-October 2011, the

D.C. Courts' Director of Human Resources and the D.C. Courts' attorney met with Plaintiff and

---

contends *are* in dispute. The Court, accordingly, must infer which of Defendants' proffered
factual assertions Plaintiff disputes. Defendants, in contrast, have identified various factual
allegations that they do dispute for present purposes. *See* Dkt. 19 at 1-5, 6-8, 19-22. For the
reasons explained below the Court concludes that it can resolve the pending motions without
resolving any dispute on these issues.

presented him with a document entitled "Settle Agreement and Release" ("Agreement"). *See*

Dkt. 1 ¶ 12; Dkt. 10-1.  Under the Agreement, the D.C. Courts agreed "to approve [Plaintiff's]

temporary assignment to the United States Marshal[s] Service pursuant to the Intergovernmental

Personnel Act of 1970 for a period beginning on October 22, 2011 and not to exceed two years

ending on October 25, 2013."  Dkt. 10-1 ¶ 1.  The D.C. Courts agreed to continue to pay for

Plaintiff's salary and benefits during this time at the same rate he was paid while at the D.C.

Courts.  *See id.*  In return, Plaintiff agreed that "upon his return at any time from his assignment

to the United States Marshal[s] Service" he would "separate from the Court within thirty days."

Dkt. 10-1 ¶ 2.  He also agreed to a general release of claims against the D.C. Courts relating to

"the employer-employee relationship" and "the circumstances of [his] resignation," and to a

waiver and release of "any private rights that he may have under the [ADEA]."  *See* Dkt. 10-1

¶¶ 3, 4.  The Agreement noted that "Employee is specifically advised that he has five (5) work

days to consider the terms of this Agreement before signing it and is encouraged to avail himself

of this period of time."  Dkt. 10-1 ¶ 4.  He was also "advised that he may revoke th[e] Agreement

within two days following the date of his signing th[e] Agreement."  *Id.*  On October 20, 2011,

Plaintiff signed the Agreement.  *See* Dkt. 15 at 5 ¶ 11; Dkt. 19 at 2-3 ¶ 11.

On October 22, 2011, Plaintiff began work at the Marshals Service in Crystal City,

Virginia.  *See* Dkt. 1 ¶ 12; Dkt. 15 at 6 ¶ 15; Dkt. 19 at 3 ¶ 15.  On or about August 10, 2012,

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC" or "Commission") relating to his employment at the D.C. Courts.  *See* Dkt. 1 ¶ 15;

Dkt. 15 at 6 ¶ 21; Dkt. 19 at 4 ¶ 21; Dkt. 15-2 at 2-3.  In his EEOC complaint, Plaintiff raised his

allegations about Mr. Friend's alleged discriminatory statement and the D.C. Courts' purportedly

pretextual performance improvement plan.  *See* Dkt. 15-2 at 2-3.  He also alleged that he had

been "forced to sign" the Agreement and that he subsequently learned that the Agreement was

"illegal and void from the outset" because it violated the OWBPA by, for example, failing to

provide him with the required period of "at least 21 days to consider" the Agreement prior to

signing and a 7-day window to withdraw from the Agreement after its execution. *See* Dkt. 15-2

at 3.  More generally, he alleged that the Agreement "was part of an overall scheme to terminate

[his] employment from the D.C. Courts."  *See id.*

The EEOC concluded that the Agreement failed to comply with the protections afforded

older workers under the OWBPA.  *See* Dkt. 10-3 at 1.  In particular, Plaintiff was not provided

"the right to consider the [A]greement for a period of twenty-one (21) days, and the right to

revoke the [A]greement for a period of seven (7) days" after its execution.  *Id.*  In addition, the

EEOC concluded that the Agreement included a waiver of future claims "which is overly broad."

*Id.*  Turning to Plaintiff's substantive claims of discrimination, the EEOC concluded that

Plaintiff's challenge to his performance evaluation and performance improvement plan was not

timely presented to the Commission.  *Id.* at 2.  And, with respect to Plaintiff's "allegations that

[the D.C. Courts] violated the ADEA when [it] reassigned [Plaintiff] and gave him a settlement

agreement to sign," the Commission concluded that, although it was not "certify[ing] that [the

D.C. Courts] is in compliance with the ADEA," "there is insufficient evidence to establish a

violation as to these allegations."  *Id.* at 2.

In April 2013, Plaintiff's assignment with the Marshals Service ended and he returned to

the D.C. Courts.  *See* Dkt. 15 at 6 ¶ 16; Dkt. 19 at 7 ¶ 7.  Upon his return, the D.C. Courts sent

Plaintiff a letter reminding him that he had "agreed to separate from the Courts within thirty days

of [his] return from the" Marshals Service.  *See* Dkt. 10-2.  He was further informed that, if he

did not comply with this agreement, the D.C. Courts would seek "termination of [his]

employment for cause." *Id.* Subsequently, Mr. Friend sent a memorandum to Plaintiff

containing Mr. Friend's "recommendation for termination." *See* Dkt. 15-6 at 1. The

memorandum explained that the recommendation was based on the prior performance

improvement plan, and, in particular, on Plaintiff's failure to complete the June 2011 assignment

in a timely and satisfactory manner. *Id.* Mr. Friend further explained that, as a result, Plaintiff

had been advised in September 2011 that his "rating was . . . deemed to have been unsatisfactory

for the rating period that was scheduled to end September 30, 2011" and that Mr. Friend "was

compiling a recommendation that [Plaintiff] be terminated from [his] employment with the

District of Columbia Courts." *Id.* at 1-2. According to Mr. Friend, this "recommendation for

termination was held in abeyance pending [Plaintiff's] following the agreed upon terms of the

[Agreement]." *Id.* Finally, the memorandum explained that "since [Plaintiff has] elected not to

follow the terms of the settlement agreement, [Mr. Friend was] proceeding with [his] formal

recommendation to the Executive Officer that [Plaintiff] be terminated for [his] failure to meet

the requirements of [his] Employee Improvement Plan." *Id.* at 2.

Defendants contend that, by this time, the D.C. Courts had concluded that the Agreement

was unenforceable and that, as a result, it merely provided Plaintiff with the opportunity

"voluntarily [to] comply with the terms of the non-effective release." Dkt. 19 at 22; *id.* at 2 ¶ 11.

When Plaintiff failed to do so, the D.C. Courts returned to Mr. Friend's prior assessment that

Plaintiff had failed to satisfy the terms of his performance improvement plan and was, on that

basis, subject to dismissal. *See id.* at 12-14. All agree that Plaintiff elected to resign or retire "in

lieu of . . . removal," and that his employment with the D.C. Courts came to an end effective July

31, 2013. *See* Dkt. 15 at 7 ¶ 26; Dkt. 19 at 2-4 ¶¶ 11, 13, 14, 26.

Without administratively further exhausting his remedies, Plaintiff filed this action on

June 13, 2014.  *See* Dkt. 1 at 1.  Defendants have now moved to dismiss under Rule 12(b)(6)

and, in the alternative, for summary judgment, Dkt. 10 at 1, and Plaintiff has cross-moved for

"partial summary judgment," seeking a "finding that Defendant District of Columbia violated the

[OWBPA] through propounding [the Agreement]," Dkt. 16 at 1-2.

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  A

complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks

omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570) (citation omitted).  The Court need not

accept as true any legal conclusions that are disguised as factual allegations, or inferences

unsupported by facts in the complaint, *see Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006),

but will give the plaintiff "the benefit of all inferences that can be derived from the facts

alleged," *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact is

material if it 'might affect the outcome of the suit under the governing law,' and a dispute about

a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Liberty*

*Lobby*, 477 U.S. at 248).  "[W]hile summary judgment must be approached with special caution

in discrimination cases," the plaintiff in an ADEA suit "is not relieved of [the] obligation to

support [his] allegations by affidavits or other competent evidence showing that there is a

genuine issue for trial."  *Stewart v. White*, 61 F. Supp. 3d 118, 128 (D.D.C. 2014) (quotation

marks omitted).

### III.  DISCUSSION

Defendants argue that (1) the Defendant D.C. Courts must be dismissed because it is not

subject to suit in its own name; (2) any claim based on the performance improvement plan must

be dismissed because Plaintiff failed to timely exhaust his administrative remedies; and (3)

Plaintiff has failed to plead a cognizable ADEA claim.  *See* Dkt. 10.  Plaintiff, for his part,

argues that he is entitled to partial summary judgment declaring that the Agreement violates the

OWBPA.  *See* Dkt. 16.  The Court will address each argument in turn.

### A.  Plaintiff's Claims Against The D.C. Courts

Defendants assert that Plaintiff's claims against the D.C. Courts must be dismissed

because "as a subdivision of the District of Columbia Government, [it] is *non sui juris*, that is,

the District's court system is not suable in its own name."  *Henok v. District of Columbia*, 58 F.

Supp. 3d 93, 95 n.1 (D.D.C. 2014).  "[T]he overwhelming weight of precedent in this Circuit . . .

holds that in the absence of *explicit* statutory authorization, bodies within the District of

Columbia government are not suable as separate entities."  *Kundrat v. District of Columbia*, 106

F. Supp. 2d 1, 7 (D.D.C. 2000) (quotation marks omitted, emphasis in original) (dismissing

complaint as to D.C. Superior Court); *see also Hoai v. Superior Court of the District of*

*Columbia*, 539 F. Supp. 2d 432, 435 (D.D.C. 2008) ("naming the D.C. courts, and their

components, as defendants does not save plaintiffs' claims because those entities are *non sui juris*").  Defendants argue that because Plaintiff has not identified any such "explicit statutory authorization," the claims against Defendant D.C. Courts must be dismissed.  Dkt. 10 at 7.

Because Plaintiff has not responded to this argument in his opposition (and only cross-moves for partial summary judgment as to Defendant District of Columbia) the Court will treat the issue as conceded.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  Accordingly, the Court dismisses the complaint as against Defendant D.C. Courts.

## B.  Exhaustion Of Plaintiff's Challenge To The Performance Improvement Plan

"Before suing under . . . the ADEA . . . an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC."  *Washington v. WMATA*, 160 F.3d 750, 752 (D.C. Cir. 1998).  In order to be considered timely, moreover, such a charge must be filed within 300 days of "the alleged unlawful practice."  *See Faison v. District of Columbia*, 664 F. Supp. 2d 59, 65 (D.D.C. 2009); 29 U.S.C. § 626(d)(1)(B).  The 300-day period to exhaust administrative remedies is not jurisdictional, and it is thus subject to equitable tolling in appropriate circumstances, *Washington*, 160 F.3d at 752, such as where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990).  "Prudential exhaustion under . . . the ADEA . . . is evaluated either under Rule 12(b)(6) for failure to state a claim or, when a party asserts that there are genuine issues of material fact in dispute, and

provides evidentiary materials in the record to support that assertion, under Rule 56." *Koch v. Walter*, 935 F. Supp. 2d 164, 170-71 (D.D.C. 2013); *see also Noisette v. Lew*, 934 F. Supp. 2d 200, 202 (D.D.C. 2013) ("If a plaintiff does not timely exhaust his administrative remedies . . . his claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.").

Here, the complaint alleges that Plaintiff was placed without justification on a performance improvement plan in June 2011, *see* Dkt. 1 ¶ 11, and that he filed a "Charge of Discrimination with the" EEOC on August 10, 2012, *id.* ¶ 15.  Because more than 300 days passed between issuance of the allegedly discriminatory performance improvement plan and Plaintiff's filing with the EEOC, the Court concludes that Plaintiff failed to pursue his administrative remedies in a timely manner.

The complaint alleges that Plaintiff "would have filed a charge of discrimination" had Defendants not deprived him of his ADEA and OWBPA rights, *see* Dkt. 1 ¶ 12, and thus hints at an equitable tolling argument.  In his opposition brief, however, Plaintiff offers no response at all to Defendants' contention that Plaintiff's challenge to the performance improvement plan is barred.  As a result, Defendants' argument is, once again, taken as conceded, *see Women's Div., Gen. Bd. of Global Ministries,* 284 F. Supp. 2d at 25; *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014), and Plaintiff's claim that the performance improvement plan constituted an independently actionable discriminatory event is dismissed for failure to timely exhaust.

## C.  The Adequacy Of Plaintiff's Challenge To The Agreement

Defendant next argues that Plaintiff has failed to plead a cognizable age discrimination claim.  *See* Dkt. 10 at 1, 12.  The complaint alleges that Defendants discriminated against Plaintiff on the basis of his age by subjecting him to an unjustified performance improvement

plan and compelling him to sign the Agreement, which provided for his reassignment and eventual resignation. *See* Dkt. 1 ¶ 19. As discussed above, Plaintiff failed to timely exhaust his administrative remedies with respect to any independently actionable claim based on the performance improvement plan. The sole remaining question is thus whether Plaintiff has adequately pled a claim of discrimination based on the Agreement.

To state a claim for discrimination under the ADEA, a covered individual must allege that he suffered an adverse employment action because of his age. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). "'An employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" *Allard v. Holder*, 840 F. Supp. 2d 269, 275 (D.D.C. 2012) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)). Examples include "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The adverse action "in most cases inflicts direct economic harm." *Burlington Indus.*, 524 U.S. at 762. "[P]urely subjective injuries, such as dissatisfaction with a reassignment . . . are not adverse actions." *Forkkio*, 306 F.3d at 1130-31.

Defendants argue in a footnote that Plaintiff's reassignment to the Marshals Service did not constitute an "adverse action" for purposes of the ADEA. *See* Dkt. 10 at 15 n.3. In opposition, Plaintiff does not dispute this contention, nor does the complaint allege that the reassignment caused Plaintiff any separate injury. The Agreement, moreover, expressly provided that the D.C. Courts would continue to pay Plaintiff at his "current bi-weekly rate"

while he was assigned to the Marshals Service and would continue to pay his benefits. *See* Dkt. 10-1 ¶ 1. As the Court of Appeals has recognized, mere "dissatisfaction with a reassignment" does not rise to the level of an "adverse employment action." *Forkkio*, 360 F.3d at 1131. Here, Plaintiff does not allege any economic or other loss or injury resulting from his reassignment, and, indeed, does not allege that he even objected to or opposed the reassignment. The Court, accordingly, concludes that Plaintiff has not pled an ADEA claim relating to his reassignment.

The complaint does allege, however, that Plaintiff was "terminat[ed] from employment" as a result of "Defendants' illegal actions," Dkt. 1 ¶ 21, and there can be no dispute that loss of a job constitutes an adverse employment action. Defendants argue that this claim nonetheless fails as a matter of law because the only factual support alleged in the complaint is the contention that Plaintiff's "supervisor . . . allegedly stated" that he could fill "'two lower level positions with younger people'" for "the same money" Plaintiff was being paid. *See* Dkt. 10 at 13. According to Defendants, "stray remarks" of this kind, "even when made by supervisors, are not sufficient to establish that age was a but-for cause of a personnel action." *Id.* In support of this contention, Defendants point to *Beeck v. Federal Express Corp.*, 81 F. Supp. 2d 48, 53-54 (D.D.C. 2000). In that case, the plaintiff alleged that when he declined to join colleagues who "would choose to go out" after team dinners, his supervisor and others "would frequently make comments similar to 'he's the old man, he needs his rest, . . . he can't keep up with us young guys.'" *Id.* at 53. Considering these comments, the court held that such "stray remarks" that "are unrelated to the decisional process itself" do not provide "direct evidence" supporting a claim of age discrimination. *Id.* at 53-54.

Here, in contrast, the complaint alleges that the purportedly discriminatory remark was made shortly before Plaintiff was placed on a performance improvement plan. *See* Dkt. 1 ¶ 11.

The timing and nature of the comment support the inference that the remark was a precursor to

Mr. Friend's decision to place Plaintiff on a performance improvement plan and to take further

action if necessary. Thus, unlike in *Beeck*, the remark at issue was arguably related to "the

decisional process itself." *See* 81 F. Supp. 2d at 53-54. In *Beeck*, moreover, the court rendered

its decision at the summary judgment phase based on a record that included depositions. *See* 81

F. Supp. 2d at 51-52. Here, in contrast, no discovery has yet occurred. In this context, and at

this stage of the ligation, it is fair to give Plaintiff the benefit of the doubt and infer that the

alleged remark was not innocuous. It "is the very essence of age discrimination for an older

employee to be fired because the employer believes that productivity and competence decline

with old age." *Wilson v. Cox*, 753 F.3d 244, 248 (D.C. Cir. 2014) (quotation marks omitted)

(reversing and holding that evidence of statements demonstrating age-related bias entitled the

plaintiff to proceed to trial). And, at the motion to dismiss stage, a plaintiff need only "plead

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Drawing all reasonable inferences in

Plaintiff's favor, the Court concludes that the complaint adequately pleads a claim for age

discrimination.

In their reply brief, Defendants attempt a different approach, arguing that Plaintiff was

not terminated pursuant to the Agreement, but instead resigned after Mr. Friend subsequently

proposed his termination in 2013. *See* Dkt. 19 at 9 ("As Plaintiff is well aware, the D.C. Courts

did not enforce the release when Plaintiff returned from his assignment at the U.S. Marshals

Service, and instead invoked the D.C. Courts' termination process."); *id.* at 3 ¶¶ 11, 13, 14; Dkts.

19-1 at 2, 19-2 at 2, 19-3 at 2 (affidavits stating that the D.C. Courts did not "enforce" the

agreement). Because, in their view, the adverse action did not occur until after Plaintiff returned

from the Marshals Service—and after he had pursued his EEOC remedy—Plaintiff never

exhausted his claim for wrongful termination.  *See* Dkt. 19 at 19.

This contention, however, goes far beyond the pleadings or the uncontested summary

judgment record.  Defendants, moreover, did not raise this argument in their opening brief.  To

the contrary, they initially conceded for purposes of their motion that "Plaintiff's employment

with the D.C. Courts ended on June 4, 2013," "in accordance with the [Agreement.]"  Dkt. 10 at

5.  They also attached to that filing an April 2013 letter from a D.C. Courts official that invoked

the Agreement as the basis for Plaintiff's resignation.  *See* Dkt. 10-2 ("per the Settlement

Agreement and Release (SAR) dated October 20, 2011, between you and the D.C. Courts, you

agreed to separate from the courts within thirty days of your return . . . . You may separate as you

agreed to in the SAR, or the termination of your employment for cause will be sought . . . .").

To the extent Plaintiff contends that he was terminated pursuant to the October 2011

Agreement, and that the implementation of that adverse employment action was merely

postponed while he was on assignment to the Marshals Service, it appears that he has exhausted

his claim.  It is not disputed that he sought relief from the EEOC on August 10, 2012,

approximately 295 days after Plaintiff signed the Agreement on October 20, 2011.  Accordingly,

his administrative complaint was filed within the 300-day window for pursuing administrative

remedies with the EEOC.  Although the parties may decide to pursue this issue further, there is

currently insufficient information before the Court to support dismissal of the discrimination

claim relating to Plaintiff's termination for lack of exhaustion or on substantive grounds.[2]

---

[2]  Plaintiff has requested discovery prior to summary judgment, pursuant to Fed. R. Civ. P. 56(d).
*See* Dkt. 15 at 24-25.  Because the Court is not granting summary judgment at this time, it need
not reach this request.

**D.  Plaintiff's Cross-Motion For Partial Summary Judgment**

Plaintiff cross-moves for "partial summary judgment," arguing that he is entitled to a

"finding that Defendant District of Columbia violated the [OWBPA]" by failing to follow the

required procedures for the settlement, waiver and release of Plaintiff's ADEA claims.  Dkt. 16

at 1-2.  In particular, Plaintiff argues that there can be no "genuine issue of material fact" that the

Settlement Agreement violates the OWBPA, Dkt. 16 at 20-22, because the Agreement's waiver

and release provisions fail on their faces to comply with three of the OWBPA's requirements:

The release violates section 626(f)(1)(C) by purporting to waive all future claims and causes of

action whether known or unknown, *see* Dkt. 10-1 ¶ 3, and the waiver violates section

626(f)(1)(F)(i) by providing only 5 days, not 21 days, to consider the agreement before signing,

*see id.* ¶ 4, and section 626(f)(1)(G) by providing only 2 days, not 7 days, to revoke the

agreement, *see id*.  The EEOC agreed with Plaintiff on all three points.  *See* Dkt. 10-3 at 1.

Defendants wisely do not dispute that the Agreement fails to comply with these

requirements.  Instead, they argue that any OWBPA violation is now irrelevant because they are

not invoking the release or waiver as an affirmative defense.  *See* Dkt. 19 at 9 ("[T]he release is

not being used by the Defendants (in this litigation or otherwise) as a defense to any claimed

ADEA liability."); *id.* at 15 ("Defendants have not and will not rely on the release signed by

Plaintiff to oppose Plaintiff's ADEA claim."); *id.* at 16, 17, 18 (similar).

The parties frame their dispute as whether the OWBPA creates an independent cause of

action or merely a defense to any invocation of a waiver or release that is inconsistent with the

OWBPA.  *See* Dkt. 16 at 15-20; Dkt. 19 at 11-18.  In the Court's view, this framing of the issue

obscures the dispositive point.  The OWBPA provides in plain terms that an employee "may not

waive any right or claim under" the ADEA "unless the waiver is knowing and voluntary."  29

U.S.C. § 626(f)(1).  The statute then specifies a number of circumstances under which a waiver

of an ADEA claim will be deemed *per se* invalid.  *See id.* §§ 626(f)(1)(A)-(G).  In addition, the

law provides that "the party asserting the validity of a waiver shall have the burden of proving

. . . that [the] waiver was knowing and voluntary."  *Id.* § 626(f)(3).  Hence, at a minimum, the

OWBPA prevents an employer from invoking a release or waiver of an ADEA claim that does

not comply with the OWBPA.  *See Oubre*, 522 U.S. at 426-27; *Whitehead v. Oklahoma Gas &*

*Elec. Co.*, 187 F.3d 1184, 1192 (10th Cir. 1999).

     In appropriate circumstances, moreover, an employee presumably would be entitled to a

declaratory judgment that a waiver or release is invalid and unenforceable under the ADEA.

*See, e.g.*, *Krane v. Capital One Servs., Inc.*, 314 F. Supp. 2d 589, 609 (E.D. Va. 2004) ("an

employee can seek declaratory and injunctive relief for a violation of the OWBPA provisions

respecting waivers found in section 626(f)").  Where, for example, an employee has good reason

to believe that she would face an action for recoupment of severance payments received to-date

if she were to file a charge with the EEOC, she might be able to bring a declaratory judgment

action to establish the invalidity of a waiver or release before doing so.  *See Commonwealth of*

*Massachusetts v. Bull HN Info. Sys.*, 143 F. Supp. 2d 134, 157-58 (D. Mass. 2001).  A proper

plaintiff might plausibly assert such a claim under the Declaratory Judgment Act, *see* 28 U.S.C.

§ 2201(a), or under the enforcement provisions of the ADEA, *see* 29 U.S.C. § 626(c).  Either

way, in the face of a concrete and substantial controversy between the parties, one party might be

able to seek a declaration of the parties' rights from a court of competent jurisdiction.  Such a

suit would be no different from any other declaratory judgment action seeking to clarify whether

a contract between the parties is enforceable.  *See, e.g.*, *Aetna Life Ins. Co. v. Haworth*, 300 U.S.

227, 240-41 (1937).

The limiting factor in any such action, however, is the availability of federal jurisdiction and a cognizable case or controversy for purposes of Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). As the Supreme Court has explained, there is no bright-line test, but "the dispute [must] be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and [it must] be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* at 127 (quoting *Aetna Life Ins.*, 300 U.S. at 240-41). In short, the dispute must be "'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, however, neither party contends that the waiver or release contained in the Agreement is valid or enforceable. Defendants do not seek to rely on the Agreement as a defense to Plaintiff's claims and do not seek to enforce any provision of the Agreement against anyone. Similarly, Plaintiff does not seek to enforce any provision of the Agreement, including any provision other than the waiver and release. And, finally, no one contends that the Agreement continues to chill anyone from taking any lawful action. For present purposes, all concur that the Agreement is null and that it will not control or limit any future action by the parties.[3] Under these circumstances, the Court lacks Article III jurisdiction to declare the Agreement unenforceable or to enjoin any action pursuant to the Agreement.

---

[3] Because both Plaintiff and the Court rely on Defendants' unambiguous representations to this effect, general principles of judicial estoppel would presumably prevent Defendants from seeking to enforce the Agreement in the future. *See Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

It is true, as Plaintiff notes, that some courts have awarded declaratory or injunctive relief with respect to waivers that fail to comply with the OWBPA.  *See Krane*, 314 F. Supp. 2d at 609; *Bull HN Info. Sys.*, 143 F. Supp. 2d at 148, 151 (declaring non-compliant releases invalid as a matter of law).  But, unlike the contracts at issue in *Krane* and *Bull*, the Agreement here does not have any ongoing significance.  It does not contain a "tender back" provision that would have a "chilling effect" on an ADEA action, *see Krane*, 314 F. Supp. 2d at 595, nor does it impose a "draconian penalty for bringing a substantive suit," *Bull HN Info. Sys.*, 143 F. Supp. 2d at 157-58; *compare id.* at 140 (requiring any employee who brought a waived discrimination claim "to return all severance pay, and to indemnify [the employer]") *with* Dkt. 10-1 (the Agreement).

Finally, Plaintiff's OWBPA claim cannot proceed on a damages theory.  Although the complaint seeks monetary relief, *see* Dkt. 1 ¶ 23, it is not at all clear that it ties the claim for monetary relief to the OWBPA violation, as opposed to Plaintiff's underlying ADEA claim for wrongful termination.  More to the point, Plaintiff's motion for partial summary judgment asserts that the Court should find "that an independent cause of action exists for *declaratory and injunctive* relief . . . for violations of" the OWBPA, Dkt. 16 at 20 (emphasis added), not for monetary relief.  The principal case on which Plaintiff relies, *Krane v. Capital One Services, Inc.*, 314 F. Supp. 2d 589 (E.D. Va. 2004), moreover, is emphatic that "no monetary damage . . . can flow simply from a violation of the waiver provisions in" the OWBPA, *see id.* at 609; *see also Bull HN Info. Sys.*, 143 F. Supp. 2d at 158 (holding non-compliant waivers invalid but concluding that the plaintiffs could not sustain "a claim for damages deriving from [the employer's] OWBPA violations themselves, without more"), and Plaintiff does not identify any contrary authority or any statutory text supporting a damages remedy for an OWBPA violation.  Finally, the statutory text and its legislative history, *see* S. Rep. No. 101-263 (1990), *reprinted in*

18

1990 U.S.C.C.A.N. 1509, 1510, leave little doubt that the law was intended to "ensur[e] that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA," *id.*; *see also Whitehead*, 187 F.3d at 1192 ("[T]he legislative history of the OWBPA clearly distinguishes between bringing an age discrimination suit and a claim that the OWBPA has been violated."). That goal is achieved by refusing to enforce any such waiver, *see, e.g.*, *Oubre*, 522 U.S. at 426-27, and, where as here, the waiver is not enforced, there is no remaining injury to remedy.

For all of these reasons, the Court concludes that Plaintiff is not entitled to summary judgment on his claim for relief based on Defendants' violation of the OWBPA, and that the claim should be dismissed for lack of jurisdiction.

## IV. CONCLUSION

For the reasons given above, it is hereby

**ORDERED** that Defendants' motion to dismiss the claims against Defendant D.C. Courts is **GRANTED** and the complaint is **DISMISSED** as to Defendant D.C. Courts; it is

**FURTHER ORDERED** that Defendants' motion to dismiss is **GRANTED** with respect to Plaintiff's ADEA claim based on the performance improvement plan, and that claim is **DISMISSED** for lack of timely exhaustion; it is

**FURTHER ORDERED** that the remainder of Defendants' motion to dismiss or for summary judgment is **DENIED**; and it is

**FURTHER ORDERED** that Plaintiff's motion for partial summary judgment is **DENIED**, and Plaintiff's claim seeking a declaration that the Agreement is unenforceable is **DISMISSED** for lack of jurisdiction.

It is **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 26, 2015